Argued and submitted January 13, decision of Court of Appeals and judgment of circuit court affirmed March 20, 2014

In the Matter of the Marriage of

James R. HERALD,
*Petitioner on Review,*

*and*

Dixie L. STEADMAN,
aka Dixie Lee Steadman,
*Respondent on Review.*

(CC 090666375; CA A146603; SC S061362)

322 P3d 546

James R. Herald, Portland, argued the cause and filed the brief on his own behalf.

Helen C. Tompkins, Law Office of Helen C. Tompkins, PC, Lake Oswego, argued the cause and filed the brief for respondent on review.

BREWER, J.

Walters, J., concurred in the judgment and filed an opinion.

Kistler, J., dissented and filed an opinion.

### BREWER, J.

In *Swan and Swan*, 301 Or 167, 176, 720 P2d 747 (1986), this court, applying preemption principles, stated that it violated federal law for "[f]amily courts, in making a division of property, [to] consider Social Security benefits." The question presented in this case—where one spouse is a Social Security participant and the other is not—is whether federal law forbids a division of property by which the value of retirement benefits belonging to the nonparticipating spouse is reduced by the present value of hypothetical Social Security benefits to which that spouse would have been entitled if she had been a Social Security participant. Because we conclude that the trial court did not violate federal law by "considering" Social Security benefits in that way, we affirm. In doing so, we clarify our above-quoted statement in *Swan*, recognizing that it was too sweeping.

The pertinent facts are few and straightforward. The parties were married for 21 years. At the time of trial, husband was 51 and wife was 53. Husband is a practicing attorney with the Army Corps of Engineers. Wife works at the Bonneville Power Administration. Both parties are beneficiaries of federal retirement benefits. Because wife is eligible for Civil Service Retirement System (CSRS) benefits, she is not eligible for Social Security benefits based on her own employment. Husband's civilian federal employment is under the Federal Employees Retirement System (FERS) and is subject to Social Security taxes. Thus, husband likely will receive a Social Security benefit based on his employment, and wife likely will not receive a Social Security benefit based on her employment.

After a trial, the trial court issued a general judgment that dissolved the parties' marriage and, among other provisions, divided their property. At the time of judgment, the parties had essentially identical annual incomes, and, if both retire at age 62, wife will have accumulated a CSRS annuity of 80 percent of her highest pay, and husband will have accumulated a FERS annuity of 24 percent of his highest pay.

The court undertook to evenly divide the parties' property, including their retirement accounts, with a proviso.

The court concluded that it would be unjust for husband to receive half of the value of wife's CSRS pension at her retirement and, at the same time, enjoy his own full share of Social Security benefits. The evidence showed that, if wife had used marital assets to pay into the Social Security system during the parties' marriage, she likely would have received a monthly Social Security benefit of $391.41, if she retired at age 62. Based on that evidence, the court provided in the judgment that, when wife reaches 62, husband's portion of wife's monthly CSRS annuity benefit will be reduced by that amount.[1]

Husband appealed, assigning error to the trial court's reduction of his share of wife's CSRS benefit in furtherance of the court's effort to make a just and proper division of the parties' property. The Court of Appeals affirmed. *Herald and Steadman*, 256 Or App 354, 303 P3d 341 (2013). We allowed review to address husband's argument that the trial court's action violated the federal preemption principle that this court applied in *Swan*. For the reasons that follow, we affirm the judgment of the trial court and the decision of the Court of Appeals.

In this case, as in many others, the parties' retirement benefits were only part—albeit a substantial part—of their overall financial resources. Under ORS 107.105(1)(f), which we set out and discuss in greater detail below, the trial court ultimately was charged with effecting a property division that was "just and proper in all the circumstances." Unless it committed a legal error in the process, the court's ultimate determination as to what overall property division was just and proper in all the circumstances was committed to its discretion. *Kunze and Kunze*, 337 Or 122, 136, 92 P3d 100 (2004). We observe at the outset that husband does not challenge the trial court's exercise of the discretionary aspect of its authority. Rather, as discussed, husband asserts that the court's treatment of wife's CSRS benefits violated federal law. We review that narrow issue for legal error.

---

[1] The trial court's disposition of the CSRS benefit was more complex, but the foregoing description accurately summarizes the essence of the disposition as pertinent here.

Section 407(a) of the Social Security Act prohibits a beneficiary from transferring or assigning Social Security benefits to another, and it prohibits the use of legal process to reach such benefits:

"The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."

42 USC § 407(a). In *Hisquierdo v. Hisquierdo*, 439 US 572, 99 S Ct 802, 59 L Ed 2d 1 (1979), the United States Supreme Court held that, in a dissolution action, a wife did not have a community property interest in her husband's anticipated Railroad Retirement benefits. In so holding, the Court noted similarities between Railroad Retirement benefits and benefits under the Social Security Act, including the fact that the laws providing for both types of benefits specifically prohibited the assignment or transfer of those benefits through garnishment, attachment, or other legal process. The Court noted that Congress, "[c]oncerned about recipients who were evading support obligations and thereby throwing children and divorced spouses on the public dole," enacted an exception for reaching Social Security benefits to satisfy a legal obligation for child support or alimony. *Id.*, 439 US at 576.[2] However, the Court emphasized that the statute also provided that "'alimony * * * does not include any payment or transfer of property or its value by an individual to his spouse or former spouse in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses.'" *Id.* at 577, *quoting* Pub L No 95-30, Tit V, § 501(d), 91 Stat 160 (1977).

---

[2] Before 1975, Social Security benefits were not subject to execution, levy, attachment, garnishment or other legal process. 42 USC § 407(a) (1974). In 1975, Congress created the exception for child support and alimony payments. 42 USC § 659(a) (1976). Since 1977, Congress has narrowly defined "alimony" as periodic payments for the support and maintenance of a former spouse and expressly excluded any payment or transfer of property in compliance with any equitable distribution of property between spouses. 42 USC § 659(3)(a).

The Court concluded that Congress had settled on a delicate statutory balance in which it had fixed an amount that it deemed appropriate to support an employee's later years and to encourage the employee to retire. *Id.* at 585. According to the Court, in deciding how finite public funds were to be allocated, Congress had chosen not to allow diminution of that fixed amount by a spouse for whom the fund was not designated. *Id.* The Court also noted that the Social Security Act provides a specific—and limited—way for divorced persons to obtain a share of a former spouse's benefits. *Id.* at 590. *See* 42 USC § 402(b)(1)(A) through (D) and (c)(1)(A) through (D) (2000).[3]

The Court in *Hisquierdo* specifically rejected the wife's argument that, even if a direct assignment of her former husband's railroad retirement benefit would violate the statutory benefit scheme, she still should be entitled to an offsetting award of presently available community property to compensate her for her interest in the anticipated benefit. The court explained: "An offsetting award, however, would upset the statutory balance and impair petitioner's economic security just as surely as would a regular deduction from his benefit check." *Id.* at 588.

It was against that backdrop that this court decided *Swan.* In that case, the trial court assigned values to both spouses' anticipated Social Security benefits in effecting an overall division of their property, and the Court of Appeals affirmed. On review, this court reversed. Relying on the Court's analysis in *Hisquierdo*, this court held that any property division based on a valuation of Social Security benefits was improper. *Swan*, 301 Or at 176. In so concluding, this court relied on 42 USC section 407(a), as well as section 659(a), which permits attachment of benefits for "alimony," and section 662(c), which expressly excludes property distributions from alimony. This court ultimately concluded:

> "Because the antiassignment provisions of 45 USC § 231(m) are legally indistinguishable from the antiassignment provisions of 42 USC § 407(a), we have no hesitancy in concluding that the *Hisquierdo* rule applies here."

---

[3] The parties do not discuss, and we find no indication in the record, whether wife in this case is eligible for such a benefit. Accordingly, we do not address that issue here.

*Swan*, 301 Or at 176. This court also inferred that, by excluding support (but not property) awards from the reach of the antiassignment statute, Congress had manifested its intent to prohibit state courts from considering Social Security benefits in dividing marital property. *Id.* at 176-77.

In this case, the Court of Appeals distinguished *Swan*:

"The holding in *Swan* is that a court is not to consider 'the *value* of any Social Security benefits' in making a property division. 301 Or at 171 (emphasis added); *see id.* ('[W]e hold that it was error to consider the value of any Social Security benefits in making a property division under ORS 107.105(1)(f).'); *id.* at 176 ('We hold that the value of Social Security benefits of either spouse may not be considered in the division of property.'). Here, the trial court did not refer to the value of husband's Social Security benefits. To be sure, the trial court's approach to dividing the parties' retirement assets was triggered by the *fact* that husband is entitled to Social Security benefits; however, the trial court did not consider or rely on the *value* of those benefits. That approach is qualitatively, and conclusively, different from that of the trial court in *Swan*, which included the actual value of the parties' Social Security benefits in the property division."

*Swan*, 256 Or App at 360-61 (emphasis in original).

The Court of Appeals also concluded that the method that the trial court used here "[is] dispositively distinguishable from the alternative approach proffered by the wife in *Hisquierdo*, by which an offset in the property division would have been based on the value of the husband's railroad retirement benefits." *Swan*, 256 Or App at 361 n 7. Finally, the Court of Appeals stated:

"Nor does the trial court's calculation of wife's hypothetical Social Security benefits implicate the fundamental 'antiassignment' policies of 42 USC section 407(a). Rather, that calculation merely allowed the trial court to place the parties on equal equitable footing with respect to the division of wife's CSRS benefits. Husband will receive the full amount of his Social Security benefits without invasion, division, or impermissible offset. That is, the trial court did not offset the value of husband's Social Security benefits by

awarding wife commensurate 'presently available [marital] property' in the manner that the Court explicitly rejected in *Hisquierdo*. 439 US at 588. Indeed, as noted, the trial court here did not evaluate or consider the value of husband's Social Security benefits in any manner. Although the fact of husband's entitlement to Social Security benefits affected the result here, nothing in *Swan* or, as nearly as we can perceive, the intended operation of section 407(a), precludes the consideration of that fact by itself."

*Swan*, 256 Or App at 361 (emphasis omitted).

Husband takes issue with the Court of Appeals' analysis. According to husband, both the trial court and the Court of Appeals "considered" Social Security Act benefits in violation of 42 USC section 407 and this court's interpretation of that statute in *Swan*. As husband sees it, "the carving out of some fictionally calculated portion of wife's CSRS benefits as an imputed Social Security Act benefit equivalent arose precisely because the lower courts disagreed with Congress's protection of Social Security Act benefits, since that protection creates the 'manifestly unjust' situation presented here and in *Swan*." Husband asserts that this court's statement in *Swan* that "[f]amily courts, in making divisions of property, cannot consider Social Security Act benefits," 301 Or at 176, "is not limited to any specific assessment of the 'value' of Social Security Act benefits, as compared to the mere 'fact'" that such benefits exist. In short, husband argues that, superficial differences notwithstanding, the actions of the trial courts and the Court of Appeals in *Swan* and in this case were essentially identical and equally forbidden.

It bears emphasis that the debate over the treatment of Social Security benefits in domestic relations actions did not end with this court's decision in *Swan*. In the 28 years since that case was decided, numerous permutations of the "Social Security dilemma" have been addressed by other state courts, and the United States Supreme Court has further interpreted a part of 42 USC section 407. In determining whether the distinctions that the trial court and the Court of Appeals have drawn between this case and *Swan* are valid and whether *Swan* described the prohibitive

effect of the federal statute too broadly, it is useful to consider those intervening developments.

Courts that have considered the issue have uniformly concluded—as this court did in *Swan*—that Social Security benefits are not marital property and are not subject to outright division in dissolution actions.[4] That understanding has several underpinnings. First, as noted, federal law preempts any state law that authorizes the assignment or transfer of Social Security benefits. *Hisquierdo*, 439 US at 575-76; *cf. McCarty v. McCarty*, 453 US 210, 232, 101 S Ct 2728, 69 L Ed 2d 589 (1981) (military retirement pay was separate property because the federal military retirement scheme preempted state property laws). Second, in the Social Security Act, Congress created an extensive, complex, and highly regulated benefit scheme, *Helvering v. Davis*, 301 US 619, 644-45, 57 S Ct 904, 81 L Ed 1307 (1937), reserving to itself "[t]he right to alter, amend or repeal any provision of th[e Act]." 42 USC § 1304. Thus, unlike divisible marital property, Social Security benefits are a "form of social insurance" in which beneficiaries have a "noncontractual interest." *Flemming v. Nestor*, 363 US 603, 609, 610, 80 S Ct 1367, 4 L Ed 2d 1435 (1960). Third, as previously mentioned, in section 402 of the Social Security Act, Congress made certain benefits available to divorcing parties and set out the circumstances in which a person is entitled to a benefit based on his or her former spouse's benefits. *See* 42 USC § 402(b), (c). As discussed, although the Act created a narrow exception to the antiassignment provision for the enforcement of

---

[4] *See, e.g., In re Marriage of Kelly*, 198 Ariz 307, 9 P3d 1046, 1047 (2000) (Social Security benefits may not be divided as community property); *Skelton v. Skelton*, 339 Ark 227, 5 SW3d 2, 4 (1999) ("Congress has excluded from its definition of marital property any benefits from Social Security"); *In re Marriage of Morehouse*, 121 P3d 264, 265 (Colo App 2005) ("a trial court cannot distribute or divide Social Security benefits as marital property"); *Mahoney v. Mahoney*, 425 Mass 441, 681 NE2d 852, 855-56 (1997) (Social Security benefits are not marital property because Congress has expressed its intent to preempt this entire area of law by providing for divorced spouses in certain situations); *Wolff v. Wolff*, 112 Nev 1355, 929 P2d 916, 920-21 (1996) (Social Security benefits cannot be divided as community property); *Neville v. Neville*, 99 Ohio St 3d 275, 791 NE2d 434, 436 (2003) (citing *Hisquierdo* for the proposition that federal law preempts a state law that would authorize the equitable distribution of Social Security benefits in a divorce action); *Marriage of Zahm*, 138 Wash 2d 213, 978 P2d 498, 502 (1999) ("federal statutes secure Social Security benefits as the separate indivisible property of the spouse who earned them").

child and spousal support obligations, 42 USC § 659(a) and 662(c), Congress has expressly excluded from that exception payment obligations arising from "any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses." 42 USC § 659(i)(3)(B)(ii). And, finally, Congress has legislatively overridden the holdings in *Hisquierdo* and *McCarty* by making railroad and military retirement benefits subject to community property law, *see* 45 USC § 231m(b)(2) and 10 USC § 1408(c)(1), but it has not passed similar legislation with respect to Social Security benefits.

In short, our holding in *Swan* that a court may not order the "transfer" or "assignment" of Social Security benefits in exercising its authority to divide property pursuant to ORS 107.105(1)(f), finds support in the provisions of the Social Security Act, and there is no reason to reexamine it here. In addition, the Court in *Hisquierdo* indicated that 42 USC section 407 also prohibits a court from indirectly effecting an assignment or transfer of Social Security benefits by making an offsetting award of other marital property to compensate for a spouse's theoretical share of the value of the other spouse's Social Security benefits. *Hisquierdo*, 439 US 572. Accordingly, this court's conclusion in *Swan* that courts may not consider the "value" of Social Security benefits in making a property division, *Swan*, 301 Or at 176, was consistent with *Hisquierdo*'s condemnation of indirect transfers or assignments of Social Security benefits by means of offsetting property awards.

However, as noted above, in another passage, this court in *Swan* stated more broadly that "[f]amily courts, in making divisions of property, cannot consider Social Security benefits." *Id.* That statement was not necessary to the decision in *Swan* because, as discussed, that case involved an impermissible offset of the *value* of the parties' anticipated Social Security benefits against the *value* of their other assets.[5] By contrast, the question of whether 42 USC section 407 prohibits *any consideration* of Social Security benefits in

---

[5] Because that statement was *dictum*, we are not bound to follow it but will consider it for the persuasive force, if any, that it has. *Halperin v. Pitts*, 352 Or 482, 494, 287 P3d 1069 (2012).

a property division is at the center of the parties' dispute in this case. We turn to that issue.

The regulation of domestic relations is traditionally the domain of state law. *Hillman v. Maretta*, ___US ___, ___, 133 S Ct 1943, 186 L Ed 2d 43 (2013); *In re Burrus*, 136 US 586, 593-94, 10 S Ct 850, 34 L Ed 500 (1890). Accordingly, there is a "presumption against pre-emption" of state laws governing domestic relations, *Egelhoff v. Egelhoff*, 532 US 141, 151, 121 S Ct 1322, 149 L Ed 2d 264 (2001), and "family and family-property law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden." *Hisquierdo*, 439 US at 581. That said, the family law domain is not fully insulated from preemption, and the Supreme Court has recognized that state laws "governing the economic aspects of domestic relations must give way to clearly conflicting federal enactments." *Ridgway v. Ridgway*, 454 US 46, 55, 102 S Ct 49, 70 L Ed 2d 39 (1981). To determine whether a state law conflicts with Congress's purposes and objectives, it is necessary to ascertain the nature of the federal interest at stake. *Crosby v. Nat'l Foreign Trade Council*, 530 US 363, 372, 120 S Ct 2288, 147 L Ed 2d 352 (2000).

As discussed, in *Hisquierdo*, the Court noted the risks that the husband might never receive federal benefits if Congress altered or eliminated them, and that his anticipated benefits might change if he worked for a different employer before he retired. *Id.* at 589. "If, for example, a nonemployee spouse receives offsetting property, and then the employee spouse dies before collecting any benefits, the employee's heirs or beneficiaries suffer to the extent that the offset exceeds the lump-sum death benefits the Act provides." *Id.* The Court repeatedly emphasized the contractual nature of pension plans in contrast to the noncontractual nature of Social Security:

> "Like Social Security, and unlike most private pension plans, railroad retirement benefits are not contractual. Congress may alter, and even eliminate, them at any time. This vulnerability to congressional edict contrasts strongly with the protection Congress has afforded recipients from creditors, tax gatherers, and all those who would 'anticipate' the receipt of benefits."

*Id.* at 575. And, notably, the possibility of changes in benefits is expressly contemplated in the Social Security Act: "The right to alter, amend, or repeal any provision of this [Act] is reserved to Congress." 42 USC § 1304.

As elaborated in *Hisquierdo*, the prohibition in section 407(a) rests in part on the principle that Social Security benefits are not contractual in nature and do not become a property interest; they are subject to change by Congressional act at any time. In addition, the statutory prohibition implicitly recognizes that employment is not necessarily permanent; over time, people change jobs and, depending on the income and benefit structures of their future employment, their eligibility for Social Security benefits (and the amount of expected benefits) can change as well.

Those uncertainties notwithstanding, there are other factors to consider in the preemption analysis. First, Social Security benefits typically are an integral part of family financial and retirement planning. Although noncontractual in nature, Social Security benefits can provide a more reliable source of income than some contractually-based retirement plans, the value of which can change with the ebbs and flows of investment markets. Second, spouses who disentangle their financial affairs, in some cases after making nearly a lifetime's array of shared financial decisions, can scarcely be viewed as the equivalent of "creditors, tax gatherers, and all those who would 'anticipate' the receipt of benefits." *Cf. Hisquierdo*, 439 US at 575. Instead, they typically are economic partners in determining how their collective resources are consumed in the present and marshaled for future use, including use in retirement. With those considerations in mind, it is useful to consider the ways in which other courts have applied 42 USC section 407 in relation to their property division statutes.

Since *Hisquierdo*, courts have adopted two broad approaches to the relationship between marital property division and Social Security benefits under 42 USC section 407. *Hisquierdo* notwithstanding, most courts have allowed consideration of a party's anticipated Social Security benefits

as a factor, among others, to be considered in fashioning an equitable property division in a dissolution action:

> "[W]hile the anti-reassignment clause of the Social Security Act precludes a trial court from directly dividing Social Security income in a divorce action, a trial court may still properly consider a spouse's Social Security income within the more elastic parameters of the court's power to formulate a just and equitable division of the parties' marital property."

*Marriage of Zahm*, 138 Wash 2d 213, 978 P2d 498, 502 (1999).[6]

In *Zahm*, for example, the Washington Supreme Court concluded that, where the trial court neither made a formal calculation of the value of the husband's Social Security benefits nor a specific counter-balancing property award to the wife, the reasoning in *Hisquierdo* did not apply. The court explained that the antiassignment provision of the Social Security Act did not preclude the trial court from considering a spouse's Social Security income "within the more elastic parameters of the court's power to formulate a just and equitable division of the parties' marital property." 978 P2d at 502. And, in *Neville v. Neville*, 99 Ohio St 3d 275, 791 NE2d 434, 437 (2003), the Ohio Supreme Court reasoned that, "[a]lthough a party's Social Security benefits cannot be divided as a marital asset, those benefits may be considered by the trial court under the catchall category as a relevant and equitable factor in making an equitable distribution." That is especially true, the court said, when "a spouse's Social Security contributions and ultimate benefits have been increased by the work of the other spouse, * * * [and] a nonemployed spouse loses spending power after a

---

[6] *See also Mahoney*, 681 NE2d at 856 (upholding consideration of "Social Security benefits as one factor, among others, in making an equitable distribution of the distributable marital assets"); *In re Marriage of Boyer*, 538 NW2d 293, 293-94 (Iowa 1995) (stating that "a state court is not required to pretend to be oblivious of the fact that one party expects benefits that will not be enjoyed by the other"); *Morehouse*, 121 P3d at 267 (holding that although an offset is not permissible, a court may premise an unequal distribution of marital property on the fact that a party is likely to have greater Social Security benefits); *In re Marriage of Brane*, 21 Kan App 2d 778, 908 P2d 625, 628 (1995) (rejecting the argument that the antiassignment provision of the Social Security Act prohibits a court from considering Social Security benefits in an equitable distribution jurisdiction).

divorce through the inability to use the other spouse's Social Security benefits." *Id.*

The Supreme Judicial Court of Maine reasoned through the problem this way:

"The court's role in property division is to accomplish a just division that takes into account all relevant factors. Just as few married couples engaged in a serious assessment of their retirement resources would ignore the availability of Social Security benefits, courts should not be required to ignore reality and fashion a distributive award of the parties' retirement and other marital assets divorced from the actual economic circumstances of each spouse at the time the division of property is to become effective. Failing to consider Social Security benefit payments a spouse can reasonably be expected to receive in the near future may result in a distorted picture of that spouse's financial needs, and, in turn, an inequitable division of the marital property."

*Depot and Depot,* 893 A2d 995, 1002 (Me 2006) (footnote and internal citations and quotations omitted).

More particularly, several courts have upheld—as falling within a trial court's authority to make an equitable property division—a hypothetical benefit method resembling the approach that the trial court used in this case. In *Cornbleth v. Cornbleth,* 397 Pa Super 421, 580 A2d 369, 371-72 (1990), where, as in this case, the division of CSRS retirement benefits was at issue, the court described the reasoning underlying such an approach:

"One of our goals with regard to equitable distribution must be to treat different individuals with differing circumstances in a fashion so as to equate them to one another as nearly as possible, thus, eliminating a bias in favor of, or against, a class of individuals. To the extent individuals with Social Security benefits enjoy an exemption of that 'asset' from equitable distribution we believe those individuals participating in the [CSRS] must, likewise, be so positioned. Consider for example an individual being divorced at approximately age fifty. Assuming a normal work history, that person will likely have accrued a substantial pension as well as a right to Social Security. When the pension is divided in equitable distribution there

will be a diminution of the expected retirement income. However, the presence of Social Security will help offset the diminution. In contrast, an individual who was a civil service participant for many years will, if the trial court's approach is approved, be dealt a double blow of sorts. The pension will become part of the marital estate and, thus, divided, yet there will be no Social Security benefit waiting to cushion this financial pitfall."

Using an analytical framework that was different from the property division scheme set out in ORS 107.105(1)(f), the Pennsylvania court deemed the CSRS pension in that case to be exempt from the property division to the extent that it replaced Social Security benefits.[7] *See also Schneeman v. Schneeman*, 420 Pa Super 65, 615 A2d 1369, 1375-76 (1992) (following *Cornbleth*). In *Kelly v. Kelly*, 198 Ariz 307, 9 P3d 1046, 1048 (2000) the Arizona Supreme Court—using a similar hypothetical approach—determined the present value of the Social Security benefits that the nonparticipating spouse would have received had he participated in the system during the marriage. The court then deducted that hypothetical value from the present value of the nonparticipating spouse's CSRS pension on the date of dissolution. *Id.* In the setting of Arizona's community property law, the court explained its treatment of the matter:

"Viewed another way, it can be seen that in the absence of Social Security contributions, the [couple] could have spent, saved, or invested those funds as it saw fit. In each instance the resulting asset, if any, would have been divisible as community property. But, as matters presently stand, community funds have been diverted to the separate benefit of one spouse. We believe this situation compels an equitable response."

*Id.* at 1048.

---

[7] The court in *Cornbleth* approved the following method:

"To facilitate a process of equating CSRS participants and Social Security participants we believe it will be necessary to compute the present value of a Social Security benefit had the CSRS participant been participating in the Social Security system. This present value should then be deducted from the present value of the CSRS pension at which time a figure for the marital portion of the pension could be derived and included in the marital estate for distribution purposes. This process should result in equating, as near as possible, the two classes of individuals for equitable distribution purposes."

*Id.* at 372.

By contrast, a minority of courts appear to have prohibited without exception any consideration of Social Security benefits that might or might not be available to either party in a marital property division. Those courts generally have concluded that no principled line can be drawn between considering the existence or absence of anticipated Social Security benefits as factors in effecting an equitable division of marital property and making a prohibited offset of the value of such benefits against the value of other assets. *See, e.g., Webster v. Webster*, 271 Neb 788, 716 NW2d 47, 54 (2006); *In re Marriage of Crook*, 211 Ill 2d 437, 813 NE2d 198 (2004); *Cox v. Cox*, 882 P2d 909 (Alaska 1994); *Wolff v. Wolff*, 112 Nev 1355, 929 P2d 916 (1996); *Olson v. Olson*, 445 NW2d 1 (ND 1989). Illustratively, in *Crook*, the court explained:

> "Instructing a trial court to 'consider' Social Security benefits * * * either causes an actual difference in the asset distribution or it does not. If it does not, then the 'consideration' is essentially without meaning. If it does, then the monetary value of the Social Security benefits the spouse would have received is taken away from that spouse and given to the other spouse to compensate for the anticipated difference. This works as an offset meant to equalize the property distribution."

813 NE2d at 205.

Consistently with that view, courts prohibiting any consideration of Social Security benefits have rejected the hypothetical benefit approach that the trial court used here, reasoning that it does not give sufficient weight to the Court's statement in *Hisquierdo* that section 407(a) prohibits an indirect division of Social Security benefits by allowing a compensatory offset to the nonparticipating spouse. *See, e.g., Skelton v. Skelton*, 339 Ark 227, 5 SW3d 2, 4 (1999); *Hayden and Hayden*, 284 NJ Super 418, 665 A2d 772, 775 (1995); *Reymann v. Reymann*, 919 SW2d 615 (Tenn App 1995).

As that split of authority among other states demonstrates, the issue before us is a challenging one. However, we find the reasoning of the majority of state courts that have considered the issue more persuasive, and we conclude that a court does not *per se* violate 42 USC section 407(a) by

considering Social Security benefits in fashioning a just and proper property division.

Our property division analysis is governed by ORS 107.105(1)(f), which provides:

"(1)    Whenever the court renders a judgment of marital * * * dissolution * * *, the court may provide in the judgment:

"* * * * *

"(f)    For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances.

"(A)    A retirement plan or pension or an interest therein shall be considered as property.

"(B)    The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets.

"(C)    * * *[t]here is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

This court set out the framework for analyzing the division of property under ORS 107.105(1)(f) in *Kunze*, 337 Or 132-36. First, a court must identify when the parties acquired the property at issue. *Id.* at 134. If the property is a marital asset (meaning that it was acquired during the marriage), "then the court must apply the rebuttable presumption of equal contribution under ORS 107.105(1)(f) as its next step in the analysis." *Id.* After applying the statutory presumption, the court considers the equity of the property division in determining whether it is "just and proper in all the circumstances." *Id.* at 135-36. That determination "takes into account the social and financial objectives of the dissolution, as well as any other considerations that bear upon the question of what division of the marital property is equitable." *Id.* at 135. Those "other considerations" include (1) asset preservation; (2) achieving the parties' economic self-sufficiency; (3) the particular needs of the parties and their children; and (4) the extent to which a party has commingled the asset. *Id.* at 136.

In *Grove v. Grove*, 280 Or 341, 571 P2d 477 (1977), where the issue was the proper amount and extent of spousal support, the court said:

"[T]hat issue cannot adequately be considered except in light of the provisions in the dissolution decree for division of property and child support. * * * In practice, the financial portions of a dissolution decree are worked out together, and none can be considered in isolation."

280 Or at 344. This court has interpreted the "'just and proper in all the circumstances' language of ORS 107.105(1)[f] to mean that the court shall consider all the circumstances of the parties, in determining the distribution of real and personal property, including the obligations of the parties for child and spousal support." *Seefeld and Seefeld*, 294 Or 345, 351, 657 P2d 201 (1982). "The equation of property division and the entitlement of a party to solely acquired property may be disturbed in order to accomplish broader purposes of a dissolution." *Pierson and Pierson*, 294 Or 117, 123, 653 P2d 1258 (1982).

Those principles pertain here. Just as few spouses who seriously plan for retirement would fail to consider their anticipated Social Security benefits, in the absence of a manifestly contrary Congressional intent, courts should not be expected to devise a just and proper award of retirement benefits without considering—among other pertinent factors—the probable economic circumstances that each spouse will face when the division of such benefits becomes operational. Failing to consider Social Security benefits that a spouse reasonably expects to receive in the foreseeable future can result in a misleading impression of that spouse's financial circumstances and, in turn, can produce an inequitable allocation of the parties' financial resources. We do not believe that Congress intended for the prohibitive grasp of the antiassignment provision in 42 USC section 407(a) to reach so far.

Accordingly, we conclude that, within appropriate limits, it is permissible for a court to consider the existence or absence of anticipated Social Security benefits for either or both spouses in effecting a just and proper division of

property under ORS 107.105(1)(f). Whether it is just and proper to do so in a particular case can depend on any number of factors, and this case does not present an opportunity to fully explore the possibilities. However, because what is just and proper under ORS 107.105(1)(f) must be assessed in light of the prohibition against assignment or transfer of Social Security benefits in 42 USC section 407(a), three considerations merit particular emphasis. The first is whether it is probable that one or both spouses will receive Social Security retirement benefits in the foreseeable future.[8] The second is whether the anticipated benefits are a substantial financial consideration when viewed in relation to the retirement assets and other financial resources that likely will be available to each spouse after the dissolution of their marriage. And, third and last, we reiterate that Social Security benefits are not marital assets, and their anticipated existence or absence therefore should be considered—if at all— only in achieving an overall just and proper division of the parties' property.[9]

It follows from the foregoing analysis that this court's statement in *Swan* that a court may not "consider" Social Security benefits in dividing property in dissolution actions swept too broadly. Accordingly, we limit the holding in *Swan* to the facts presented in that case. To recapitulate the proper scope of that holding: As pertinent to the division of property in a marital dissolution action, the antiassignment provision in 42 USC section 407(a) prohibits either (1) an outright transfer or assignment of a participant's Social Security benefits, or (2) an offsetting award in value

---

[8] Consistently with that consideration, some courts have declined to approve the use of the "hypothetical offset" method that the trial court used here where the spouses' anticipated retirement dates are remote in time or significantly different from each other. For example, in *White v. White*, 284 NJ Super 300, 664 A2d 1297 (1995), the court concluded that, to distribute the marital assets more equitably, an amount representing what the husband hypothetically would have received in Social Security benefits should not be deducted from his CSRS pension benefits before the court distributed them. In distinguishing *Cornbleth*, the court in *White* explained that "[t]he principal difficulty with an offset in this case is the difference in time when the parties will be eligible for their respective benefits." 664 A2d at 1299; *see also Schaffner v. Schaffner*, 713 A2d 1245, 1249 (RI 1998) (similarly distinguishing *Cornbleth*).

[9] As discussed, the Social Security Act does permit the attachment or garnishment of benefits to satisfy support obligations. 42 USC §§ 659(a).

of other assets based on the value of a participant's Social Security benefits.[10]

In this case, the trial court's division of wife's retirement benefits did not violate either of those prohibitions. Although the court considered, in effecting a just and proper division of the parties' property, that husband likely will receive Social Security benefits in the foreseeable future, whereas wife will not, the court did not assign or transfer husband's benefits to wife or offset the value of those benefits in awarding other property to wife. Instead, the court awarded wife a greater share of her own CSRS benefit in recognition of the likelihood that, otherwise, her income at retirement—in comparison to husband's income—would be inequitably lower.[11] We conclude that the court's action did not constitute a transfer or assignment of husband's Social Security benefits that was prohibited by 42 USC section 407(a).[12]

---

[10] This court in *Swan* did not separately analyze the additional prohibition in 42 USC section 407(a) against subjecting Social Security benefits to "legal process."

[11] In disagreeing with our characterization of the trial court's actions in this case, the dissent does not assert that section 407(a) prohibited that court from "considering" the existence or absence of anticipated Social Security benefits at the "just and proper" stage of the property division analysis. Accordingly, the dissent does not defend the contrary *dictum* in *Swan*. Instead, the dissent would conclude that the trial court's action here too closely resembled the direct offset that the Court condemned in *Hisquierdo* to pass preemption muster. We do not share the dissent's view that keeping faith with the Court's construction of the statute in *Hisquierdo* compels the conclusion that its preemptive reach extends so far beyond the words that Congress used.

By contrast, it appears that the concurrence would conclude that our ultimate holding in *Swan*—that section 407(a) prohibits a court from granting a spouse who will receive no Social Security benefits a direct offsetting award of other property—was incorrect. 355 Or at 131 (Walters, J., concurring). The concurrence presents an interesting analysis, and it may be that, at some point, the United States Supreme Court will revisit *Hisquierdo* or this court will alter the understanding of *Hisquierdo* that it adopted in *Swan*. In the meantime, we disavow the *dictum* in *Swan*, but go no further.

[12] In so concluding, we do not adopt the Pennsylvania court's analysis in *Cornbleth* or, for that matter, the analysis of any other court that has approved the hypothetical benefit method of taking into consideration the existence or absence of Social Security benefits in a marital property division. As discussed, the court in *Cornbleth* treated the CSRS benefits in that case as being *exempt* from the property division calculus to the extent that they were deemed to replace Social Security benefits. *Cornbleth*, 580 A2d at 372. By contrast, and consistently with the mandate of ORS 107.105(1)(f), the trial court in this case recognized that wife's CSRS benefits are a marital asset, and it employed a hypothetical benefit calculation at the "just and proper" stage of the analysis.

Husband's broad challenge to the division of property in this case also arguably implicates the prohibition in 42 USC section 407(a) against subjecting "the moneys paid or payable or rights existing under this subchapter *** to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." *Id.* To the extent that it does so, we reject that aspect of his challenge. Since *Hisquierdo* was decided, the Supreme Court has had occasion to revisit section 407(a), and it has adopted a common-sense view of the meaning of "other legal process" as used in that section:

> "'[O]ther legal process' should be understood to be process much like the processes of execution, levy, attachment, and garnishment, and at a minimum, would seem to require utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability."

*Washington State Dept. of Social & Health Servs. v. Guardianship Estate of Keffeler,* 537 US 371, 385, 123 S Ct 1017, 154 L Ed 2d 972 (2003).

Although it involved different circumstances, *Keffeler* is instructive here. The Court there observed that, although Old-Age, Survivors, and Disability Insurance (OASDI) benefits under Title II of the Social Security Act, 42 USC § 401 *et seq.*, are generally paid directly to a beneficiary, the Social Security Administration may distribute them to another person or entity as the beneficiary's "representative payee." 42 USC §§ 405(j)(1)(A), 1383(a)(2)(A)(ii)(I). Regulations provide that social service agencies and custodial institutions may serve as representative payees. 20 CFR §§ 404.2021(b)(7), 416.621(b)(7). Such a payee may expend funds "only for the use and benefit of the beneficiary," in a way that the payee determines "to be in the [beneficiary's] best interests." 20 CFR §§ 404.2035(a), 416.635(a). Payments made for "current maintenance" are "for the use and benefit of the beneficiary," and "current maintenance" includes "cost[s] incurred in obtaining food, shelter, clothing, medical care, and personal comfort items." 20 CFR §§ 404.2040(a), 416.640(a). A representative payee "may not be required to use benefit

payments to satisfy a [beneficiary's] debt" that arose before the period the benefit payments are certified to cover, but a payee may discharge such a debt if the beneficiary's "current and reasonably foreseeable needs" are met and it is in the beneficiary's interest to do so. 20 CFR §§ 404.2040(d), 416.640(d).

Pursuant to its regulation requiring that public benefits for a child, including OASDI and SSI benefits, be used on behalf of the child to help pay for the child's foster care costs, the Washington Department of Social and Health Services generally credited Social Security benefits to a special account for beneficiary children, and then debited the account to pay foster care providers. The respondents, who included beneficiary children, filed a class action in state court, alleging, among other things, that the department's use of their Social Security benefits to reimburse itself for the foster care costs violated 42 USC section 407(a).

In granting summary judgment to the respondents, the trial court enjoined the department from continuing to charge its foster care costs against Social Security benefits, ordered restitution of previous reimbursement transfers, and awarded attorney's fees. The Washington Supreme Court ultimately affirmed the trial court's holding that the department's practices violated the "legal process" provision of the federal statute. *See Keffeler*, 537 US at 375-81.

On *certiorari*, the Court disagreed, holding that the state's use of the respondent's Social Security benefits to reimburse itself did not violate 42 USC section 407(a). The Court held that neither the department's effort to become a representative payee, nor its use of the respondents' Social Security benefits when it acted in that capacity, amounted to employing an "execution, levy, attachment, garnishment, or other legal process" under section 407(a). Because the department's activities did not involve any of the specified formal procedures, the case boiled down to whether those activities were "other legal process." *Id.* at 382-83. The Court held that the statute uses that term restrictively; the Court relied on the interpretative canon of *ejusdem generis*, that is, where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar to those enumerated by the specific words.

Thus, the Court understood "other legal process" to be process that, like execution, levy, attachment, and garnishment, required "utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability." *Id.* at 385. Whereas the object of the named processes—execution, levy, attachment, and garnishment—was to discharge, or secure discharge of, some enforceable obligation, the state had no enforceable claim against its foster children. Thus, the Court concluded that the department's practice did not constitute "legal process" that violated 42 USC section 407(a). *Id.* at 385-86.[13]

Similarly, as pertinent here, a dissolution court's consideration of the existence or absence of anticipated Social Security benefits as factors relevant to a just and proper division of property in all the circumstances is neither a judicial process "much like the processes of execution, levy, attachment and garnishment," nor a mechanism by which control over Social Security benefits "passes from one person to another."[14] *Keffeler*, 537 US at 385. It follows that the trial court's method of considering Social Security benefits in this case did not violate the "legal process" prohibition of 42 USC § 407(a).[15]

---

[13] We note that the Railroad Retirement Act provision that the Court construed in *Hisquierdo* was more restrictive than the "legal process" prohibition of section 407(a):

"Notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process *under any circumstances whatsoever, nor shall the payment thereof be anticipated*[.]"

*Hisquierdo*, 439 US at 576 (quoting 45 USC § 231m) (emphasis added). Section 407(a) does not contain language that corresponds to the emphasized text above. It also bears mention that the Court in *Keffeler* did not refer to *Hisquierdo*.

[14] We reiterate that, in assessing the preemptive reach of section 407(a), this court in *Swan* did not separately analyze the "legal process" prohibition in section 407(a). Rather, this court in *Swan* primarily focused on the statute's prohibition of the assignment or transfer of Social Security benefits. Accordingly, our discussion of the "legal process" prohibition here does not directly call into question this court's holding in *Swan*.

[15] We understand the dissent to suggest that the trial court's action in this case violated both prohibitions in section 407(a). Our examination discloses no case in which a court has held that a similar action violated the "legal process" prohibition in the statute.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**WALTERS, J.,** concurring in the judgment.

In a landmark case decided last year, the United States Supreme Court wrote that "[t]he states, at the time of the adoption of the Constitution, possessed full power over the subject of marriage and divorce * * * [and] the Constitution delegated no authority to the Government of the United States on the subject of marriage and divorce." *United States v. Windsor,* ___ US ___, 133 S Ct 2675, 2691, 186 L Ed 2d 808 (2013). Therefore, the Court explained, consistently with that allocation of authority, "[t]he Federal Government, through our history, has deferred to state-law policy decisions with respect to domestic relations." *Id.* Yet Congress, on occasion, has enacted discrete statutes that bear on marital rights and privileges. *Id.* at 2690. In a case decided the same day as *Windsor,* the Court explained that when there is a contention that a federal law preempts state law governing domestic relations, federal courts are to apply a "presumption against pre-emption": When Congress has not stated an express intent to preempt state law, "family and family-property law must do major damage to clear and substantial federal interests before the Supremacy Clause will demand that state law will be overridden." *Hillman v. Maretta,* ___ US ___, 133 S Ct 1943, 1950, 186 L Ed 2d 43 (2013) (internal citations omitted).

The majority uses that standard to determine whether 42 USC § 407(a) of the Social Security Act (section 407) preempts state law. Section 407 prohibits the transfer or assignment of "moneys paid or payable or rights existing" under that Act, and further provides that none of those moneys or rights "shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." The majority holds that section 407 "prohibits either (1) an outright transfer or assignment of a participant's Social Security benefits, or (2) an offsetting award in value of other assets based on the value of a participant's Social Security benefits." *Herald v. Steadman,* 355 Or 104, 122-23, 322 P3d 546 (2014).

I agree with the majority in many respects. I agree that *Hillman* provides the applicable mode of analysis, that section 407 prohibits an Oregon court from ordering an outright transfer or assignment of a participant's future Social Security benefits, and that section 407 does not prohibit the judgment that the trial court entered in this case. However, in my view, the preemptive effect of section 407 does not reach as far as the majority concludes that it does. I write to explain my reasoning.

The majority relies for its conclusion on *Hisquierdo v. Hisquierdo*, 439 US 572, 99 S Ct 802, 59 L Ed 2d 1 (1979). In that case, the California Supreme Court had held that a participant's expectation of receiving railroad retirement benefits was community property to which he and his spouse had equal rights. *In re Marriage of Hisquierdo*, 19 Cal 3d 613, 615, 566 P2d 224 (1977). The United States Supreme Court reversed, holding that California's community property law was preempted by the federal Railroad Retirement Act. 439 US at 590.

As the majority recognizes, *Hisquierdo* does not control the result in this case: both the state and the federal law at issue here are different. First, Oregon is not a community property state, and no spouse has an equal right to property separately held by the other. ORS 107.105(1)(f). When a court grants a dissolution of marriage, the court may provide "[f]or the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances." *Id.* Second, the federal law at issue here is the Social Security Act, not the Railroad Retirement Act.

Thus, we must look to the terms of the Social Security Act and specifically to section 407 to determine its effect on Oregon family law. Section 407 includes an express prohibition on the transfer or assignment of future Social Security benefits. 42 USC § 407(a). It therefore prohibits all persons, including state and federal courts, from making such transfers or assignments. Section 407 also protects Social Security benefits from execution, levy, attachment, garnishment, or other legal process and thereby prohibits all persons, including state and federal courts, from engaging

in those acts.[1] I agree that those provisions prohibit state courts from transferring or assigning a participant's Social Security benefits.

Section 407 does not expressly prohibit state courts from taking any actions other than those that it lists, nor does it expressly preempt state law. Thus, if we are to give section 407 any additional preemptive effect, we must enter the realm of "implied" preemption. There we begin, as noted, with the "presumption against pre-emption." *Hillman,* 133 S Ct at 1950. We then consider whether the state law in question, ORS 107.105(1)(f), does "major damage" to "clear and substantial federal interests." *Id.*

The only clear and substantial interest disclosed by the terms of section 407 is the interest in ensuring that a Social Security participant receives the Social Security benefits to which he or she is entitled. Section 407 prohibits the transfer or assignment of those benefits; it also prohibits the use of legal process to attach, garnish, or otherwise levy or execute on those benefits. If Oregon law, like the California law considered in *Hisquierdo,* were to provide that future Social Security benefits are community property and that each spouse is entitled to one half of the other's benefits, that law would be in opposition to the federal interest in ensuring that the entirety of a participant's benefits go to the participant. But that is not the law in Oregon, and no party contends that an Oregon court is authorized to award a participant's future Social Security benefits to a spouse.

In 1975, Congress amended the Social Security Act to add a new provision to the effect that, notwithstanding any contrary law, "including section 407 of this title," federal benefits may be reached "to enforce the legal obligation of the individual to provide child support or alimony." 42 USC § 659(a). In 1979, Congress added a definitional provision, now located at 42 USC § 659(i)(3)(B)(ii), which provides that "alimony" does not include the division of property between

---

[1] It could be that section 407 is more accurately viewed as a federal prohibition imposed by that sovereign on all actors. Viewed in that way, the question may more accurately be stated as a question whether Congress has the power to impose that prohibition rather than as a question whether Congress intended to preempt state law.

spouses or former spouses. Thus, as amended, the Social Security Act no longer prohibits persons, including courts, from utilizing legal process to attach Social Security benefits to satisfy obligations for child support or alimony. The fact that section 407 continues to preclude courts from transferring, assigning, or executing on future Social Security benefits when it divides spousal property does not impose additional limitations on state courts or evidence a federal interest other than continuing to ensure that participants receive the Social Security benefits to which they are entitled. Section 659(a) explicitly creates an exception to section 407(a) to allow the attachment of Social Security benefits to assist parents and children in collecting support obligations, but that exception does not indicate a congressional intent to bar state courts from carrying out their statutory obligations to divide spousal property in a way that is "just and proper."

I cannot discern from the terms of section 407 any federal interest other than insuring that Social Security benefits be received by the participant. In *Hisquierdo,* the Supreme Court identified in the Railroad Retirement Act a congressional intent to preclude a participant in that retirement program from receiving advance payment of benefits. 439 US at 589. The Court relied on a provision in the Railroad Retirement Act that prohibited the "anticipation" of payments. *Id.* at 588. That meant, the Court explained, that even if a court did not award a participant's spouse a direct interest in a participant's future benefits but instead awarded the spouse an offsetting payment, the spouse would improperly "anticipate" the future benefits by receiving her interest before the date Congress set for the participant's interest to accrue. That anticipation, the Court opined, would frustrate federal policy. *Id.* at 589.

That same wording is not included in the Social Security Act. Section 407 does address "future payments," but it prohibits only the transfer and assignment of and execution on those payments; it does not preclude a participant, spouse, or court from "anticipating" them. Thus, the federal interests that the Supreme Court located in the Railroad Retirement Act's prohibition on anticipation do not inhere in the Social Security Act. Moreover, Congress now has

amended the Railroad Retirement Act to eliminate not only the prohibition on anticipation, but also the prohibitions on the transfer or assignment of and execution on its benefits. 45 USC § 231m(b)(2). To me, that indicates that Congress did not ascribe to the reasoning or the result in *Hisquierdo* and would therefore not have intended to extend section 407 beyond its express terms to prohibit a court from granting a spouse who will receive no Social Security benefits an offsetting award of other property.

I cannot identify in section 407 any clear and substantial federal interests that are in jeopardy of major damage from the application of Oregon family law. The state has a strong interest in ensuring that when its residents leave a marriage they do so on terms that are just and proper. Federal interests are not harmed when state courts act to advance their residents' financial security.

To date, the federal government has deferred to the states the difficult decisions about how spousal assets should be divided on dissolution. Resolving the question of what should happen when one spouse brings assets into a marriage or acquires assets during a marriage that have greater economic value than assets brought or acquired by the other raises questions of fairness with which state legislatures have struggled and that state courts must decide, considering the unique facts of each case, on a daily basis. Perhaps the Supreme Court will decide that, in passing the Social Security Act, Congress intended to do more than ensure that Social Security participants receive the benefits to which they are entitled. Perhaps the Court will decide that Congress also intended to limit the tools available to state courts to divide spousal property in a way that is just and proper. However, I detect in the Supreme Court's decisions in both *Windsor* and *Hillman* a robust respect for the states' traditional role in family law and a reluctance to extend implied preemption in that field. In *Hillman,* the Court held that a federal law requiring that a designated beneficiary receive federal insurance benefits preempted a state law that allocated those proceeds to another. 133 S Ct at 1953. However, the Court noted that it was not writing on a "clean slate," *id.* at 1950, and relied on a "direct conflict" between the two laws to decide that the state law was

preempted. *Id.* at 1955. I expect that the Court would do the same if it were called on to interpret section 407.

As a state court, we should not decide that the Supremacy Clause limits our state's role in making and carrying out the law that governs family relations unless we are convinced that Congress intended to override the presumption that state law should prevail. I would hold that the only direct limitation that Congress imposed on states when it enacted section 407 was a prohibition on judicial transfer or assignment of and execution on a participant's Social Security benefits; therefore I would not imply any additional preemptive intent.

**KISTLER, J.,** dissenting.

The issue in this dissolution proceeding arises from the fact that husband is eligible to receive Social Security benefits on retirement while wife is not. She is eligible to receive a different federal retirement benefit. Ordinarily, retirement benefits are a form of property that is subject to division in dissolution proceedings. As a matter of federal law, however, husband's Social Security benefits are not subject to a property division, nor may a trial court redistribute the parties' property to compensate for that federal policy choice. *See Hisquierdo v. Hisquierdo*, 439 US 572, 99 S Ct 802, 59 L Ed 2d 1 (1979) (considering a similar statutory scheme). Additionally, Congress has specified the amount of Social Security benefits that a divorced spouse who would not otherwise be eligible for those benefits can receive. 42 USC § 402(b). And it also has specified how those Social Security benefits should be adjusted when, as in this case, the spouse who is not eligible for Social Security benefits is eligible to receive other federal retirement benefits. 42 USC § 402(k)(5)(A).

That federal statutory scheme precludes state courts from adjusting the parties' retirement benefits to compensate for the inability to divide one spouse's Social Security benefits as part of a property division. *Hisquierdo*, 439 US at 588. That is, however, precisely what the trial court did here. The trial court explained that it was inequitable and unfair that husband's Social Security benefits were not subject to

a property division but that wife's federal retirements benefits were. To compensate for that inequity, the trial court reduced the amount of wife's retirement benefits that were subject to division to offset the Social Security benefits that federal law entitled husband to retain. In making that adjustment, the trial court did exactly what *Hisquierdo* said it may not do.

To avoid any misunderstanding, I do not mean to suggest that the Social Security Act precludes any consideration of Social Security benefits in making a just and equitable division of property. The question is not whether state courts can consider those benefits but the terms on which they may do so. In this case, the trial court did not divide all the parties' property on some neutral basis. Rather, it reduced the amount of wife's retirement benefits that were subject to division specifically to counterbalance the Social Security benefits that husband retained. Because that order cannot be reconciled with *Hisquierdo*, I respectfully dissent.

Before turning to the legal principles that govern this case, it is helpful to describe more completely the basis for the trial court's order in this case. Both husband and wife are federal employees. Husband is eligible for Social Security benefits on retirement. Wife is not, but she is eligible for a different federal benefit on retirement—Civil Service Retirement System (CSRS) benefits. As both husband and wife agree, the Social Security Act prevented the trial court from including husband's Social Security benefits in the property division, and it also precluded the trial court from offsetting those benefits with a corresponding benefit to wife. *See Hisquierdo*, 439 US at 586-88. Although Congress has provided that Social Security benefits are not subject to division, it has expressly provided that CSRS benefits may be divided in a dissolution proceeding. *See McCarty v. McCarty*, 453 US 210, 231-32, 101 S Ct 2728, 69 L Ed 2d 589 (1981).[1]

---

[1] In *McCarty*, the Court concluded that Congress had intended to preempt state courts from dividing military retirement benefits in part because Congress had provided that military retirement benefits could not be divided but had provided that CSRS retirement benefits were subject to division. *See* 453 US at 231-32.

The trial court found that congressional choice troubling. It stated that, if it divided the parties' marital assets equally, then husband would get all his Social Security benefits as well as half of wife's CSRS benefits. As the court explained, "I can't see how that's fair or just or equitable. I just don't understand how that could possibly be what it is that should happen here." To avoid that inequity, the trial court employed a strategy employed by some other states. The court reduced the amount of the wife's federal retirement benefits, which are subject to division, to compensate her for the fact that husband's Social Security benefits are not subject to division.

Specifically, the court determined the amount of Social Security benefits that wife would have received if she had been eligible for them. It then reduced the amount of her retirement benefits by that amount. (The court previously had reduced wife's retirement benefits to reflect the fact that she had earned some of those benefits before the parties' marriage.) The trial court then divided wife's reduced retirement benefit between the parties. As the court explained in its letter opinion, it reduced the amount of wife's retirement benefits to "ensur[e] that Husband would not get his own social security when he retires and also receive half of what substitutes for Wife's social security as well."

The purpose and effect of the trial court's adjustment are clear. The trial court's purpose in reducing the amount of wife's retirement benefits was to offset the Social Security benefits that husband receives. The effect is equally clear. By reducing the amount of wife's retirement benefits that are subject to division, the trial court ensured that wife will retain a hypothetical Social Security benefit just as husband will retain an actual Social Security benefit. To be sure, the amounts of the hypothetical and actual Social Security benefits that each spouse will retain are not identical. Husband and wife have not had identical earnings over the years, and one will be entitled to receive a greater Social Security benefit (whether hypothetical or actual) than the other. However, the indisputable effect of the court's order is to allow the wife to retain more of her pension benefits to offset the fact that husband's Social Security benefits are not subject to division.

The United States Supreme Court decisions on this issue are clear. They recognize that ordinarily state law governs the way in which property acquired during marriage will be divided. *Hisquierdo*, 439 US at 581. They also recognize that federal law will preempt state law only when "[s]tate family and family-property law [does] 'major damage' to 'clear and substantial' federal interests." *Id.* Applying that standard, the Court held in *Hisquierdo* that, as a matter of federal preemption, federal retirement benefits payable under the Railroad Retirement Act were not subject to division in a state dissolution proceeding. *Id.* at 587-88. The Court also rejected the wife's argument in that case that, if the husband's retirement benefits could not divided, she should receive "an offsetting award of presently available community property to compensate her for her interest in [her husband's] expected benefits." *Id.* at 588. The Court explained that, among other difficulties, "[a]n offsetting award *** would upset the statutory balance and impair [the huband's] economic security just as surely as would a regular deduction from his benefit check." *Id.*

The Court relied on three aspects of the federal statutory scheme in reaching that conclusion. First, it reasoned that allowing the division of the husband's federal retirement benefits would run afoul of the "flat prohibition against attachment and anticipation" in the Railroad Retirement Act. *See McCarty*, 453 US at 220 (summarizing that aspect of *Hisquierdo*'s reasoning). Second, the Court found evidence of Congress's preemptive intent in an exception that Congress had crafted to the prohibition against attaching or anticipating federal retirement benefits. Congress had provided that, despite the general prohibition against attaching or anticipating federal retirement benefits, those benefits are available to pay child support and alimony. *Hisquierdo*, 439 US at 577; *see* 42 USC § 659(a) (permitting actions to recover child support and alimony). Notably, Congress has defined "alimony" narrowly to exclude "any payment or transfer of property or its value by an individual to the spouse or a former spouse of the individual in compliance with any *** equitable distribution of property, or other division of property between spouses or former spouses." 42 USC § 659(i)(3)(B); *see Hisquierdo*, 439 US at 577 (quoting an earlier version

of that statute). Finally, the Court relied on the fact that Congress had provided a limited spousal benefit for federal employees that terminated on divorce. 439 US at 584-85. Given that statutory scheme, the Court concluded that Congress had preempted the authority that states otherwise would enjoy to divide or offset federal retirement benefits. *Id.*

This case does not involve retirement benefits payable under the Railroad Retirement Act. Rather, it involves Social Security benefits. The Social Security Act prohibits anticipating and attaching those benefits as the Railroad Retirement Act does.[2] Additionally, the Social Security Act makes Social Security benefits available for alimony, and it defines that term narrowly to exclude any payment or other transfer of money "in compliance with any * * * equitable distribution of property." *See* 42 USC § 659(i)(3)(B) (defining alimony). Finally, as the majority recognizes, the Social Security Act provides a specified benefit for divorced spouses who would not otherwise be eligible to receive Social Security benefits. *See* 42 USC § 402(b)(1)(A)-(D) and 402(c)(1)(A)-(D). And it also specifies how those benefits will be reduced if the divorced spouse is employed by the federal government and is eligible to receive other federal retirement benefits. *See* 42 USC § 402(k)(5)(A)(i)-(ii).[3]

---

[2] The prohibition against attaching retirement benefits is virtually identical in both acts. The prohibition against anticipation is worded differently. The Social Security Act provides that the "right of any person to any *future* payment under this subchapter shall not be transferable or assignable." 42 USC § 407(a) (emphasis added). The Railroad Retirement Act provided that "nor shall the payment [under the act] be anticipated." 45 USC § 231m (1976). Wife does not argue that that difference is material.

[3] If a divorced spouse is not otherwise eligible to receive Social Security benefits and meets certain other criteria, he or she will receive 50 percent of the amount of the Social Security benefit that the eligible spouse is entitled to receive. 42 USC § 402(b). However, when a divorced spouse is also entitled to receive a "monthly periodic benefit" based on that "individual's earnings while in the service of the Federal Government or any State," the divorced spouse's Social Security benefit under 42 USC § 402(b) will be reduced by two-thirds of the monthly periodic benefit. 42 USC § 402(k)(5)(A)(i)-(ii).

The majority notes that the parties have not addressed how these provisions apply in this case, but that case-specific focus misses the point. Where, as here, Congress has specified how Social Security benefits and other federal retirement benefits should be adjusted on divorce, state courts should not tinker with the balance Congress has struck.

Given that statutory framework, wife correctly acknowledges that the reasoning in *Hisquierdo* applies to Social Security benefits.[4] She advances, however, three arguments why *Hisquierdo* does not control. She argues initially that trial courts need not ignore one spouse's Social Security benefits in effecting a just and equitable distribution of property. As a general principle, wife's argument is unexceptionable. Nothing in the Social Security Act prevents trial courts from determining that, in light of the parties' differing needs or the difficulty in dividing certain pieces of the property, one spouse should get the "long half" of all the property. The trial court did not take that course, however. Rather, it considered how to allocate the parties' retirement benefits separately from their other property. And, considering only those benefits, the trial court offset husband's ability to shield his Social Security benefits from division by reducing the amount of wife's CSRS benefits that were themselves subject to division.

As a matter of equity, it is difficult to fault the trial court's instincts. However, as the Court explained in *McCarty*, Congress amended the definition of alimony in 1977 to exclude "any * * * transfer of property in compliance with any * * * equitable distribution of property." 453 US at 230. That same year, Congress also "require[d] that Civil Service retirement benefits be paid to an ex-spouse to the extent provided for in 'the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce * * *.'" *Id.* In making those changes, Congress did

---

[4] Wife does not argue that *Hisquierdo* or *McCarty*'s reasoning is inapplicable because Congress has since amended the statutes underlying those cases to permit division of railroad retirement and military pension benefits in state dissolution proceedings. *See* Pub L 98-525, § 643(a)-(d), 98 Stat 2547 (1984) (military pension benefits); Pub L 98-76, § 419(a), 97 Stat 438 (1983) (railroad retirement benefits). As wife implicitly recognizes, Congress has not similarly amended the Social Security Act. Congress may have thought that no amendment to the Social Security Act was necessary both because it had already specified the amount of Social Security benefits available for divorced spouses who would not otherwise be eligible for those benefits and because it had specified how those benefits should be reduced if, as in this case, the divorced spouse is eligible for other federal retirement benefits. Whatever the reason for Congress's inaction, the Social Security Act still contains virtually the same terms that the Court interpreted in *Hisquierdo* and *McCarty*, and the question is how to reconcile the trial court's order in this case with the Court's interpretation of those terms in *Hisquierdo* and *McCarty*.

not amend the provision in the Social Security Act that prohibits attachment or anticipation of Social Security benefits. Rather, it left intact the provisions of the Social Security Act that specify when divorced spouses will be eligible for Social Security benefits and when those benefits will be reduced because the divorced spouse is entitled to receive other monthly benefits due to federal employment. To paraphrase the Court's reasoning in *McCarty*, when Congress has provided which federal benefits are subject to division and which are not, it is not up to the state courts to devise a more equitable distribution. *See id.* at 231-32.[5]

Wife's second argument turns on her interpretation of federal policy. She recognizes that the Social Security Act prevented the trial court from transferring property to her to offset husband's retention of his Social Security benefits. *See Hisquierdo*, 439 US at 588. She argues, however, that nothing in that Act prevented the trial court from reducing the amount of her retirement benefits subject to division for the same purpose. Wife's argument is puzzling. If wife cannot take property from husband to compensate her for his retention of his Social Security benefits, it is difficult to see how she can withhold property from him for the very same reason. Economically, there is no difference.

To be sure, the amount of federal retirement benefits that wife withholds from division under the trial court's formulation will not be identical to the amount of Social Security benefits that husband retains. However, wife cannot avoid the fact that the purpose and the effect of the trial court's order is "to compensate her for her interest in [husband's] expected benefits," just as in *Hisquierdo*. *See* 439 US at 588. And the trial court's order in this case is equally in violation of federal policy.[6]

---

[5] The question in *McCarty* was whether, on dissolution of a marriage, federal law precluded a trial court from dividing military nondisability retired pay pursuant to state community property laws. 453 US at 211. As in this case, Congress had made some types of federal retirement benefits subject to equitable division in dissolution proceedings while shielding other federal retirement benefits from that process.

[6] The Court noted two independent problems with the wife's proposed offset in *Hisquierdo*. 439 US at 588-90. First, it reasoned that an offsetting award "would upset the statutory balance [that Congress has struck] and impair [the husband's] economic security just as surely as would a regular deduction from his

Finally, wife suggests that the decision in *Washington State Dept. of Social & Health Servs. v. Guardianship Estate of Keffeler*, 537 US 371, 123 S Ct 1017, 154 L Ed 2d 972 (2003), undercuts the Court's earlier decisions in *Hisquierdo* and *McCarty*. Wife reads *Keffeler* too broadly. In *Keffeler*, children whom the state had removed from their parents and placed in foster care were entitled to two types of federal benefits under the Social Security Act. *Id.* at 375-76. Ordinarily, the federal government pays those benefits directly; however, it also may distribute those benefits to a representative payee "for [the beneficiary's] use and benefit." *Id.* at 376. In *Keffeler*, the federal government paid the benefits to the Washington Department of Social and Health Services, as the representative payee, and the state agency used those benefits to pay foster parents for the care they provided the children. *Id.* at 379.

A class action was brought on behalf of the children, claiming that the anti-attachment provision in Section 407(a) of the Social Security Act barred the state agency from using federal benefits intended for the children's benefit to pay the state's obligation to reimburse the foster parents who cared for them. The Court held otherwise. 537 US at 385-86. It noted that Section 407(a) protects Social Security benefits from "execution, levy, attachment, garnishment, or other legal process." 42 USC § 407(a). The Court explained that the state agency's action did not constitute "other legal process" for two reasons.[7] First, execution, levy, attachment, garnishment, and other legal process "typically involve the exercise of some sort of judicial or quasi-judicial authority to gain control over another's property." 537 US at 386. However,

---

benefit check." *Id.* at 588. Second, the Court noted that the harm might even be greater because the present value of the property transferred to wife might turn out to be more than the present value of the Social Security benefits that the husband would ultimately receive. *Id.* at 588-90. The trial court's order presents the first and primary problem that the Court identified in *Hisquierdo*, not the second, more hypothetical concern.

[7] The Court explained that, as used in Section 407(a), the phrase "other legal process" refers to process that

"require[s] utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability."

537 US at 385.

the "department's reimbursement scheme operates on funds already in the department's possession and control, held on terms that allow reimbursement." *Id.* Second, although the object of the process is to discharge "some enforceable obligation," the state agency "has no enforceable claim against its foster children." *Id.*

Put differently, because the state agency was using funds entrusted to it as the representative payee, it was not using judicial authority to gain control over "another's property," nor was it seeking to satisfy any claim that it had against the foster children. For those reasons, the Court held that the state agency's use of the federal benefits to pay for foster care did not come within the terms of Section 407(a) of the Social Security Act.[8] Nothing in the Court's holding in *Keffeler* calls into question its holdings in *Hisquierdo* and *McCarty*—namely, that a trial court order in a dissolution proceeding that requires one divorced spouse to pay the other federal retirement benefits to enforce a state imposed property division constitutes "other legal process" within the meaning of Section 407(a). Not only do those three cases address different issues, but the Court in *Keffeler* had no reason to consider, as the Court did in *Hisquierdo* and *McCarty*, that Congress had expressly excepted child support and alimony from the reach of Section 407(a) and, in doing so, had made clear that that exception does not include "any payment or transfer of property or its value by an individual to a spouse or former spouse in compliance with any * * * equitable distribution of property."

We cannot follow *Hisquierdo* and *McCarty* and also uphold the trial court's order. To be sure, *Hisquierdo* and *McCarty* were decided by a divided Court. As the dissents in those cases illustrate, there is more than one way to interpret the preemptive effect of the federal retirement statutes that Congress has enacted. One might question whether Congress intended to interfere with the ordinary processes of state courts in dividing the assets of divorcing spouses. One might also question whether there is a cognizable federal

---

[8] The Court also held that the state agency's use of Social Security benefits to pay for the past and current maintenance of the foster children complied with the statutory requirement that the payee distribute the funds "for [the beneficiary's] use and benefit." 537 US at 386-88.

purpose in shielding one spouse's retirement benefits from being included in a property division while expressly permitting the other spouse's retirement benefits to be divided. The resulting inequity grates on judicial sensibilities and, as the majority opinion details, has resulted in deep and persistent divisions among state courts applying federal law. However, as I read the opinions for the Court in *Hisquierdo* and *McCarty*, they do not permit state courts to employ the stratagem the trial court did here. Unless and until the Court limits or reverses those decisions, we are bound to follow them. For that reason, I respectfully dissent.