Filed 7/29/24  Torres v. Torres CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ANGEL RAMIRO JOSE GARRON TORRES,<br><br>          Petitioner and Appellant,<br><br>v.<br><br>ODETTE GARRON TORRES,<br><br>          Respondent. | A168161<br><br>(Contra Costa County Super. Ct. No. MSD20-02241) |

Angel Ramiro Jose Garron Torres (Husband) appeals a judgment following a statement of decision regarding his marital division with Odette Garron Torres (Wife).  He contends it was legal error to award Wife the marital home and offset his interest with various bank accounts it found "impossible" to value.  He also asserts the trial court erred in setting the spousal support award beyond his ability to pay, denying him reimbursement for Wife's post-separation use of the home, and equally apportioning one of his retirement accounts.  We reverse in part and remand for redetermining the valuation and division of Husband's domestic and international accounts.  In all other respects, we affirm.

## BACKGROUND

Husband and Wife were married for over 28 years before separating in June 2020 following a domestic violence allegation.  Husband moved out of

1

the home and filed for divorce the next month. After their separation, Wife paid all household expenses from community funds until the court ordered Husband to pay temporary spousal support. Meanwhile, the parties attempted to divide their assets and resolve permanent spousal support.

In August 2021, Wife successfully sought sanctions against Husband for breaching his fiduciary duties and discovery misconduct. The trial court issued sanctions against him payable as Wife's attorney's fees and costs pursuant to Family Code sections 271 and 2030.[1]

The trial took place in June 2022. The principal disputed issues were spousal support, the division of community property — i.e., the home and various financial accounts — and reimbursements for alleged expenditures from separate funds. Wife also requested further monetary sanctions because Husband had continued to not fully disclose the existence and value of assets that he managed.

The trial court first divided Husband's Bayer, US, LLC pension, and 401k (Bayer account), Fluor Corporation Employee Savings Investment Plan (Fluor account), and Chemingineering Technology GmBH/ERGO (German pension) equally between the parties. The court also determined the home's fair market value and found it was entirely community property because Husband failed to adequately trace the source of the funds contributed to the down payment. Rather than partition the home by sale, the court awarded it to Wife and offset Husband's interest by confirming to him Wife's interest in a dozen retirement, brokerage, and savings accounts.

While the trial court found the home had a net value of $1.29 million, it did not make an express finding as to the value of the dozen accounts confirmed to Husband. Instead, the court explained that Husband's

---

[1] Undesignated references are to the Family Code.

2

disclosure violations and evasive testimony rendered it "impossible [to] determine the values of the domestic and international accounts in order to equitably divide the community's assets and debts." As an example, the court noted that Husband's Income and Expense declaration in January 2022 stated he owned no " 'stocks, bonds, and other assets' " that could be easily sold, but his updated declaration in April identified $3,223,243 in such assets. The court also faulted Husband for reading answers on direct examination and failing to turn over the answer key.

The trial court also denied Husband's request to be reimbursed for Wife's exclusive use of the home pursuant to *In re Marriage of Watts* (1985) 171 Cal.App.3d 366 (*Watts*) because such compensation would not be "warranted, just, or reasonable." It held Wife's use was not "exclusive" because Husband voluntarily chose to not return to the home. Separately, the court found that "Husband essentially abandoned all responsibility for maintaining the family home," leaving Wife to cover the expenses with community funds and eventually with spousal support payments.

In considering permanent spousal support, the court's statement of decision evaluated all the factors enumerated in section 4320. Despite acknowledging Husband's stated intention to retire later that year, the court increased the spousal support award to $5,500 per month. In assessing his ability to pay, it expressly considered "Husband's ongoing failure to disclose the full extent of his financial accounts and available resources."

Beyond considering the inequities of, and making negative inferences from, Husband's inadequate disclosures and frustration of public policy, the court sanctioned Husband an additional $70,000 in attorney fees and costs under sections 271, 1100, and 2030.

Husband filed a timely appeal.

3

**DISCUSSION**

Husband argues the trial court erred in four respects. He contends it was legal error to award Wife their home — appraised at $1.29 million of net value — but merely confirm to him various bank accounts it found "impossible" to value. He asserts the court abused its discretion in setting the spousal support award by failing to account for his intent to retire. He also claims that Wife owed him reimbursement for her post-separation use of the marital home and that his corporate savings plan with Fluor Corporation (Fluor account) must be apportioned per the time rule because it included separate premarital property. We address each contention in turn.

**I. Division of Community Assets**

Husband asserts the trial court abused its discretion by unequally dividing the couple's community assets because the court failed to assign values to the accounts awarded to him. He further avers that, to the extent the court implicitly shifted the burden to him to show the accounts' value, such burden shifting was improper because Wife failed to present prima facie evidence of their value. We find the trial court erred by *not explicitly* adopting a burden-shifting framework. (*In re Marriage of Prentis-Margulis & Margulis* (2011) 198 Cal.App.4th 1252, 1257–1258 (*Margulis*).) Because the court failed to do so, it did not make a finding of the accounts' value and therefore could not equally divide the couple's assets. (§§ 2550, 2552.) Accordingly, we reverse and remand for further proceedings.

***A. Court Must Equally Divide Community Assets***

Generally, community assets must be divided equally between spouses, with the assets' values typically determined at or near the time of trial. (§§ 2550, 2552; *In re Marriage of Peterson* (2016) 243 Cal.App.4th 923, 935–936.) We review the trial court's division of community property for abuse of

4

discretion, upholding its factual findings (such as asset valuations) based on substantial evidence. (*In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1572.) On review for substantial evidence, " 'we accept all evidence favorable to the prevailing party as true and discard contrary evidence.' " (*In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 34.)

Here, the trial court assigned Husband a dozen retirement, brokerage, and savings accounts acquired during the marriage to "offset his interest in the [home]," which was awarded to Wife. The community's interest in the home was $1.29 million after accounting for the remaining mortgage. But the court expressly found it "impossible [to] determine" the values of the accounts awarded to Husband.

This express finding precludes us from affirming an implied factual determination of the financial accounts' values. (Cf. *In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1176 [court's "implied factual determinations are binding on appeal"].) The trial court did not — as Wife contends — affix a value within "the range of the evidence." (Cf. *In re Marriage of Bergman* (1985) 168 Cal.App.3d 742, 754 [the court may "reach its own independent determination" regarding an asset's value where there is "extensive expert testimony" even if it rejects the specific valuations proffered].) Indeed, despite such evidence, the court explicitly failed to make a valuation at any date or based on any evidence.[2] (Cf. *In re Marriage of Nelson* (2006) 139 Cal.App.4th 1546, 1550–1551 [valuation at date of separation appropriate where inadequate disclosure made valuation at trial date "difficult if not impossible to calculate"].)

---

[2] This distinguishes *Marriage of Calcaterra & Badakhsh*, *supra*, 132 Cal.App.4th at page 35, in which the court drew a negative inference that the income figure on a loan application only represented one spouse's income.

We are not persuaded by Wife's argument that the trial court properly considered Husband's claim to have $3.2 million in liquid assets. The court did note that Husband's April 25, 2022, declaration, which was prepared with assistance of counsel, listed $3,223,243 in easily salable " 'stocks, bonds, and other assets.' " But this figure *perfectly* matches the sum of the four account values listed in his April 8, 2022, declaration, also prepared with counsel's help. This arithmetic exactitude gives credence to Husband's argument that he mistakenly included his Bayer and Fluor retirement accounts as easily sellable assets. More importantly, the Bayer account — which the court divided equally as a community asset — alone exceeds 90 percent of the accounts' total value, as evidenced by Husband's June 20, 2020, account statement. And we observe the court did not find fault with Husband's disclosure of that account, which cannot be double counted to also offset Husband's interest in the home. (*In re Schleich* (2017) 8 Cal.App.5th 267, 284–288.) Only Wife's interest in the dozen accounts awarded to Husband may offset his interest in the home, but their value cannot be affixed "merely to achieve mathematical equality." (*In re Marriage of Hargrave* (1985) 163 Cal.App.3d 346, 354.)

Thus, the trial court's division of the property constitutes an abuse of discretion under California's "strict policies" to divide community assets equally. (*In re Marriage of Peterson, supra,* 243 Cal.App.4th at pp. 937–938; see *Margulis*, *supra*, 198 Cal.App.4th at p. 1276 ["property's 'disappearance' at time of trial does not excuse the court from making the necessary findings on its disposition"].) Accordingly, the valuation and division of the domestic and international financial assets must be remanded for redetermination.

### B. Court Must Employ Burden-Shifting Scheme on Remand

We understand the trial court's predicament. Husband "repeatedly" violated his fiduciary duty of disclosure as well as his discovery obligations. And he exhibited disregard for these obligations throughout trial despite earlier sanctions. Given these circumstances, it was necessary to adopt a burden-shifting framework as outlined in *Margulis* to determine the value of Husband's financial assets. (*Margulis*, *supra*, 198 Cal.App.4th at p. 1276.)

In *Margulis*, the trial court erred "in refusing to shift the burden of proof to [the husband] to show the disposition and valuation of community assets in his control postseparation." (*Margulis*, *supra*, 198 Cal.App.4th at p. 1266.) The *Margulis* court noted that "once a nonmanaging spouse makes a prima facie showing concerning the existence and value of community assets in the control of the other spouse postseparation, the burden of proof shifts to the managing spouse to rebut the showing or prove the proper disposition or lesser value of these assets. If the managing spouse fails to meet this burden, the court should charge the managing spouse with the assets according to the prima facie showing." (*Id.* at p. 1267.)

The *Margulis* court went on to explain how it reached this burden shifting evaluation. (*Margulis*, *supra*, 198 Cal.App.4th at pp. 1267–1269.) It determined that " '[c]ourts may alter the normal allocation of the burden of proof' based on considerations of fairness and policy." (*Id.* at p. 1267.) The court recognized that fundamental fairness is central to the analysis and " ' "determining the incidence of the burden of proof . . . '. . . is merely a question of policy and fairness based on experience in the different situations.' " ' " (*Id.* at p. 1268.)

When evaluating the burden-shifting analysis, the trial court should review the following factors: " ' "the knowledge of the parties concerning the

7

particular fact, the availability of the evidence to the parties, the most desirable result in terms of public policy in the absence of proof of the particular fact, and the probability of the existence or nonexistence of the fact." ' " (*Margulis, supra,* 198 Cal.App.4th at p. 1268.)  The *Margulis* court recognized that a common trigger for shifting the burden arises " 'when the parties have unequal access to evidence necessary to prove a disputed issue. " 'Where the evidence necessary to establish a fact essential to a claim lies peculiarly within the knowledge and competence of one of the parties, that party has the burden of going forward with the evidence on the issue although it is not the party asserting the claim.' " ' " (*Ibid.*)  As pointed out in *Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 35, "where essential financial records are in the exclusive control of the defendant who would benefit from any incompleteness, public policy is best served by shifting the burden of proof to the defendant, thereby imposing the risk of any incompleteness in the records on the party obligated to maintain them." When this occurs, fairness requires shifting to the managing spouse the burden of proof as to the value or lack thereof of the asset.  Thereafter, the non-managing spouse is free to rebut any evidence presented by the managing spouse.

The trial court must evaluate the appropriateness and application of the burden shifting analysis based on the specific circumstances presented in each case.  While the trial court in our case is free to determine on remand the appropriate burden shifting procedure, it appears to us that Wife would be obligated to set forth a prima facie showing of the existence of the domestic and international accounts and the management and control of

8

those accounts by Husband.[3]  However, once this showing has been made (which seems apparent from this record), the burden of proof would shift to Husband to show the value or the lack thereof of those accounts.  The Wife is then free to rebut Husband's offer of proof as to any lack of value or the misuse of the accounts in a fashion inconsistent with Husband's fiduciary obligations under section 721.[4]  (*In re Marriage of Mohammadijoo and Dadashian* (2024) 102 Cal.App.5th 392, 514) (*Mohammadijoo*), citing *Margulis*, *supra*, 198 Cal.App.4th at p. 1279.)

Interposing a burden shifting analysis in this manner " 'furthers the statutory purpose of requiring complete transparency and accountability in the management of community assets and of providing a remedy to the nonmanaging spouse when a breach of that fiduciary duty occurs.' " (*Mohammadijoo, supra,* 102 Cal.App.5th at p. 405.)

We observe that, here, Husband's own testimony and I&E statements may constitute prima facie evidence of certain accounts' values.  (See *Margulis*, *supra*, 198 Cal.App.4th at p. 1273.)  Specifically, his self-prepared statements and trial testimony provided the approximate values of four

---

[3] We recognize that in *Margulis*, the court required the non-managing spouse to show the value of the community asset as part of their prima facie case (*Margulis*, *supra*, 198 Cal.App.4th at p. 1267); however, that would be incompatible with the fairness and policy considerations in this case where the trial court found that it was "impossible" for the court, let alone Wife, to place an evaluation on the accounts due to husband's disclosure conduct.

[4] Section 721(b) states in relevant part:  "in transactions between themselves, spouses are subject to the general rules governing fiduciary relationships that control the actions of persons occupying confidential relations with each other.  This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other.  This confidential relationship is a fiduciary relationship subject to the same rights and duties of nonmarital business partners . . . ."

accounts — T. Rowe Price, Merril Lynch, Commerzbank, and UBS — as $43,067, $34,213, $39,822, and $300,000, respectively. Similarly, Husband admitted he managed other accounts in the past, shifting the burden to him to prove the proper disposition of those community assets. (*Margulis, supra*, 198 Cal.App.4th at pp. 1274–1276.) Nevertheless, we do not opine on whether this constitutes prima facie evidence of the existence or values of these accounts, or the existence and values of the other accounts.[5] The trial court did not adopt a burden shifting analysis in reaching its conclusion regarding the marital home, so it did not make any findings regarding a prima facie showing. We decline to do so in the first instance.[6]

We are cognizant of perverse incentives possibly created by allowing spouses who deliberately breach their disclosure obligations to relitigate asset valuations. (See *In re Marriage of Steiner & Hosseini* (2004) 117 Cal.App.4th 519, 528.) But an equal division of assets is paramount under California law, and that is not possible without a finding on the assets' value. (*In re Marriage of Peterson, supra*, 243 Cal.App.4th at pp. 935–936.) By adopting a burden-shifting framework similar to the one outlined above, the trial court is in a position to make a finding supported by substantial evidence consistent with the principles of equal division of community assets. (See *In re Marriage of Campi, supra*, 212 Cal.App.4th at p. 1572.)

---

[5] Specifically, Husband testified he cashed out a combined $126,000 from a Credifondo investment account and a real estate investment. He also testified that he "liquidated" a BNY Mellon account to cover the cost of his children's attendance at Stanford. And he claimed to have "liquidated" a Computershare account that same year.

[6] We recognize that we review the question of whether a prima facie showing has been made under a de novo standard (see *Mohammadijoo, supra*, 102 Cal.App.5th at p. 406); however, unlike *Margulis* and *Mohammadijoo*, the trial court here did not make a prima facie finding for us to review.

Moreover, on remand, the trial court "may order an accounting of the property" (§ 1101, subd. (b)), issue further sanctions (§§ 1101, subd. (g), 271, subd. (c)), and use alternative valuation dates "where fairness requires." (*Margulis*, *supra*, 198 Cal.App.4th at p. 1279; § 2552, subd. (b).) If the court finds Husband's non-disclosure of asset values constitutes fraud, oppression, and malice within the meaning of Code of Civil Procedure section 3294, it may award Wife the entire value of those assets. (§ 1101, subd. (h); *Margulis*, at p. 1270.)

In sum, we remand the issues of valuation and division of the domestic and international financial accounts for a redetermination in accordance with the burden-shifting scheme and considerations described above.

**II. No Abuse of Discretion in Spousal Support Award**

Husband next asserts the trial court abused its discretion in its support award because it failed to properly account for his stated intention to retire and thus his ability to pay. (*In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1443 [standard of review].) We disagree.

The trial court thoroughly considered and weighed the factors laid out in section 4320 and then exercised its broad discretion in setting the permanent support award. (§ 4320; *In re Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 424.) Husband does not dispute this. Instead, he claims that "[s]ubstantial evidence does not support the trial court's finding that Husband has the ability to continue paying $5,500 per month in spousal support after retirement."

Fatal to Husband's argument is that he presented no evidence of his forthcoming retirement other than his testimony, which the trial court found not credible and we do not reconsider. (*Marriage of Calcaterra & Badakhsh*, *supra*, 132 Cal.App.4th at p. 34.) The authority he cites is therefore inapt

11

because he failed to substantiate a "bona fide retirement." (Cf. *In re Marriage of Reynolds* (1998) 63 Cal.App.4th 1373, 1379; *In re Marriage of Shimkus* (2016) 244 Cal.App.4th 1262, 1268 [" 'Court received evidence of . . . [Jeff's] retirement' "].)[7]

Based on the evidence of Husband's income at the time of trial, the permanent spousal support award was reasonable. (*In re Marriage of Tydlaska* (2003) 114 Cal.App.4th 572, 575.) Husband's March 25, 2022, paystub showed he had earned over $67,000 in less than three months year-to-date, which closely matched his pay the preceding years. Because Husband's income was substantiated by such evidence, our holding in *Swan v. Hatchett* (2023) 92 Cal.App.5th 1206, 1216, where there was no basis for concluding a father had a specific gross income "[b]ecause neither [the mother] nor the department submitted evidence of [his] income" and the court "entirely ignored [his] evidence," is inapposite.

Husband fails to cite any authority in support of his argument that the trial court improperly considered his "bad faith tactics, [and] failure to disclose" in reaching the spousal support award. Indeed, section 4320 expressly contemplates such equitable considerations. (§ 4320, subd. (n) [the court shall consider "[a]ny other factors the court determines are just and equitable"].) We also observe that Husband is incorrect in his assertion that the statement of decision bars a future motion to modify support, and we express no view on whether Husband may succeed in showing a material

---

[7] Husband's reliance on other case law is also misplaced. Husband does not allege the trial court used an incorrect income figure. (Cf. *In re Marriage of Rosen* (2002) 105 Cal.App.4th 808, 825.) Nor does the instant award automatically decrease and terminate despite "the court's factual determination supporting an increase." (Cf. *In re Marriage of Prietsch & Calhoun* (1987) 190 Cal.App.3d 645, 656.)

12

change in circumstances after the last order if he seeks a modification.  (*In re Marriage of Shimkus*, *supra*, 244 Cal.App.4th at p. 1273 [" 'The trial court has broad discretion to decide whether to modify a spousal support order' "].)

It cannot reasonably be pronounced on this record that " ' "after calm and careful reflection upon the entire matter, it can fairly be said that no judge would reasonably make the same order under the same circumstances." ' " (*In re Marriage of Tydlaska*, *supra*, 114 Cal.App.4th at p. 575.)  Finding no abuse of discretion in the spousal support award, we affirm it.

### III. The Court Did Not Abuse Its Discretion in Denying *Watts* Charges

Husband asserts the trial court erred as a matter of law in finding that Wife did not have exclusive use of the home because he was not legally barred from entering it.  Based on this error, by his account, the court abused its discretion in denying him reimbursement for reasonable rental value pursuant to *Watts*, *supra*, 171 Cal.App.3d at page 366.  But Husband ignores the court's discretionary finding that reimbursement would be inequitable. (*In re Marriage of Mohler* (2020) 47 Cal.App.5th 788, 797.)

In accord with *Watts*, the trial court factored in equitable concerns before denying Husband's reimbursement request.  (*In re Marriage of Mohler*, *supra*, 47 Cal.App.5th at p. 797 [citing cases]; *Watts*, *supra*, 171 Cal.App.3d at p. 374.)  Specifically, the court properly considered whether Wife's use of community funds to pay community obligations discharged Husband's duty to support.  (*Watts*, at p. 374, citing *In re Marriage of Smith* (1978) 79 Cal.App.3d 725, 747.)  As the court explained, "Husband essentially abandoned all responsibility for maintaining the family home" and left unemployed Wife responsible for doing so with community accounts.

At oral argument, Husband argued that he did not return to the home due to a restraining order. However, the trial court found that the restraining order was temporary, expired on August 4, 2020, and Wife did not seek a permanent order. No order barred Husband from the family home after August 4, 2020. Nor did Husband make any attempts to visit or reside in the home after August 4, 2020. Instead, from December 2020 onward, Husband decided to leave the United States, choosing to live with family in Bolivia.

Considering the instant circumstances — including that Husband voluntarily left the country and lived with family "incurring very little in the way of expenses" — we find no abuse of discretion in denying *Watts* charges.

**IV. Court Did Not Err in Division of Fluor Account**

Husband complains his Fluor account was a premarital asset, at least in part, and thus the trial court erred as a matter of law by ordering it divided equally. But fault for any error lies with him.

While the trial court must apportion retirement accounts " 'between the community property interest of the employee spouse and the nonemployee spouse and any separate property interest of the employee spouse alone' " (*In re Marriage of Belthius* (2023) 88 Cal.App.5th 1, 9), apportionment requires evidence tracing property interests to separate property. (See *id.* at pp. 9–10; *In re Marriage of Simonis* (2023) 95 Cal.App.5th 1129, 1147.) Here, Husband argues he disclosed the account's existence in August 2020, but he does not point to any evidence of his separate property interests beyond his own declarations. Instead, the record reveals that Husband failed to disclose account statements from the date it was opened, the date of marriage, and the date of separation despite Wife's specific requests for that information.

Besides Husband's testimony, which the trial court found lacked credibility, Husband failed to produce any evidence of separate property contributions to the Fluor account. Husband is correct that "tracing is entirely possible," but the time for that has passed. Husband failed to meet the tracing burden necessary to overcome the section 760 community property presumption. (*Marriage of Braud* (1996) 45 Cal.App.4th 797, 822–825.) Where the spouse with the burden to conduct tracing fails to sufficiently identify separate and community interests, the stated commingled asset will be deemed community property. (*In re Marriage of Simonis*, *supra*, 95 Cal.App.5th at p. 1147.)

The court therefore properly treated the Fluor account as community property. We affirm the court's equal division of it.

## DISPOSITION

The judgment is reversed in part, and the valuation and division of Husband's domestic and international accounts are remanded for redetermination. In all other respects, the judgment is affirmed. Wife is entitled to costs on appeal. (Cal. Rules of Court, rules 8.278(a)(3), (5).)

HITE, J. [*]

We concur:

STREETER, Acting P. J.
GOLDMAN, J.

*Torres v. Torres* (A168161)

---

[*] Judge of the Superior Court of California, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15